**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DANA BENJAMIN, | ) | NO. ED CV 13-2343-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) | **AND ORDER OF REMAND** |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on January 8, 2014, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on March 3, 2014. Plaintiff filed a motion for summary judgment on June 19, 2014.

Defendant filed a motion for summary judgment on July 21, 2014.  The Court has taken the motions under submission without oral argument. See L.R. 7-15; Minute Order, filed January 9, 2014.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a former administrative assistant, asserts disability since October 8, 2008, based on "mental problems" (Administrative Record ("A.R.") 128-46, 161-63).  An Administrative Law Judge ("ALJ") found Plaintiff has the following severe conditions: "schizoaffective disorder; post-traumatic stress disorder (PTSD); history of alcohol dependency, in early remission; and personality disorder" (A.R. 21). The ALJ found that, notwithstanding these impairments: (1) Plaintiff retains the residual functional capacity for work at all exertion levels with certain nonexertional limitations;[1] and (2) a person with this residual functional capacity could perform work as a general clerk, clerk typist, or office helper (A.R. 23, 30-31 (adopting vocational expert testimony at A.R. 62-64)).  In denying benefits, the ALJ deemed Plaintiff's subjective complaints less than fully credible (A.R. 24-28).  The Appeals Council denied review (A.R. 5-7).

---

[1] Specifically, the ALJ found that Plaintiff would have the following nonexertional limitations:

> [Plaintiff] cannot perform work requiring hyper-vigilance or intense concentration on a particular task; she could perform work involving things or data rather than people; [Plaintiff] cannot tolerate frequent changes in her workplace setting, routine or schedule; and she cannot perform work involving fast-paced production or assembly-line type work.

(A.R. 23).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

**DISCUSSION**

**I.   The ALJ Materially Erred in the Analysis of Plaintiff's Credibility.**

When an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause the symptoms alleged, the ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings, supported in the record, to justify discounting such testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Varney
///
///

v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988).[2] Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Social Security Ruling 96-7p.

In the present case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" (A.R. 25) (emphasis added). However, the ALJ characterized Plaintiff's testimony regarding the severity of her symptoms and limitations as "greater than expected in light of other statements and the objective evidence of record," given:

---

[2] In the absence of a finding of "malingering," or at least evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Ghanim v. Colvin, 2014 WL 4056530, at *7 n.9 (9th Cir. Aug. 18, 2014); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Commissioner of Social Security Admin., 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v. Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

4

1  (1) Plaintiff's "largely normal" level of daily activities;
2  (2) Plaintiff's receipt of unemployment compensation during the
3  alleged disability period; and (3) Plaintiff's "limited" treatment
4  records showing (a) no evidence of treatment for Plaintiff's
5  psychiatric condition from the alleged onset date until Plaintiff was
6  hospitalized in October of 2010, (b) Plaintiff's refusal to attend
7  group psychotherapy sessions and insistence on "only a few individual
8  sessions," (c) no evidence that Plaintiff actually received
9  psychotherapy, (d) gaps in Plaintiff's psychiatric treatment,
10 (e) noncompliance with medications because Plaintiff would forget to
11 take them at times, and (f) evidence suggesting that Plaintiff only
12 contacted the mental health clinic when she ran out of medication, and
13 would do so by walk-in visits where she showed no signs of psychotic
14 or manic behavior (A.R. 24-28).[3]

   Turning first to the treatment records, a limited course of
treatment sometimes can justify the rejection of a claimant's
testimony, at least where the testimony concerns physical problems.
See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack
of consistent treatment such as where there was a three to four month
gap in treatment properly considered in discrediting claimant's back
pain testimony); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)
(in assessing the credibility of a claimant's pain testimony, the

---

[3] Defendant also emphasizes the medical evidence, particularly the medical opinion evidence. Where, as here, the other stated reasons for discounting a claimant's testimony are insufficient, the medical evidence cannot constitute a sufficient reason. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Administration properly may consider the claimant's failure to request treatment and failure to follow treatment advice) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors in assessing pain testimony include limited treatment and minimal use of medications); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (absence of treatment for back pain during half of the alleged disability period, and evidence of only "conservative treatment" when the claimant finally sought treatment, sufficient to discount claimant's testimony).  However, the Ninth Circuit has observed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotations omitted); see also Garrison v. Colvin, ___ F.3d ___, 2014 WL 3397218, at *23, n.24 (9th Cir. July 14, 2014) (quoting Nguyen v. Chater); Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (same; also noting that mental illness is notoriously underreported); Martinez v. Colvin, 2014 WL 3809048, at *12 (D. Ariz. Aug. 1, 2014) (finding noncompliance with mental health treatment not to be an appropriate basis for the ALJ to discount claimant's credibility); Rosas v. Colvin, 2014 WL 3736531, at *11 (C.D. Cal. July 28, 2014) (claimant's limited treatment for mental illness not by itself a clear and convincing reason for rejecting claimant's credibility); Etter v. Colvin, 2014 WL 2931145, at *2-*3 (C.D. Cal. June 26, 2014) (finding ALJ's residual functional capacity assessment not supported by substantial evidence where ALJ gave "little" weight to the psychiatric consultative examiner's opinion and, in doing so, highlighted that the

claimant had not received mental health treatment; citing, inter alia, Nguyen v. Chater); accord Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009) ("a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse") (internal citations and quotations omitted); Kangail v. Barnhart, 454 F.3d 627, 630 (7th Cir. 2006) ("mental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment") (internal citations omitted).

Plaintiff, who was 36 years old at the time of the hearing, testified that she quit high school because she ran away, tried to kill herself, and went to a mental hospital, adding "I went to mental hospitals back then" (A.R. 41). Plaintiff testified that she stopped working due to problems with anxiety and nervousness, she had missed approximately four days of work per month, and she was terminated because of her attitude with clients and because she would not, or could not, "dress up" (A.R. 43-44). Plaintiff said that she never sought treatment for issues dealing with her work behavior because she did not have insurance when she lost her job and thought she "could deal with it on [her] own" (A.R. 45). Plaintiff also did not undergo the only therapy available to her, group therapy,[4] because she did not feel comfortable talking in front of men concerning her issues (which

---

[4] See A.R. 260, 280-81 (treatment notes indicating Plaintiff requested and was denied individual therapy); A.R. 342, 344 (Plaintiff again requesting individual therapy but reportedly expressing no interest in transferring to another agency for long term therapy).

included a history of molestation) (A.R. 47-48).

Although Plaintiff's treatment notes consist primarily of medication refill walk-in visits or calls (see, e.g., A.R. 284, 331-33, 336-45, 354-55), as of the hearing date Plaintiff was taking Prozac, Lithium, and Seroquel, and had been prescribed Zyprexa (A.R. 45). Courts specifically have recognized that the prescription of Lithium, Seroquel, and Zyprexa, connotes mental health treatment which is not "conservative," within the meaning of social security jurisprudence. See, e.g., Carden v. Colvin, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014) (Zyprexa, Lithium and Seroquel); Mason v. Colvin, 2013 WL 5278932, at *3-6 (Seroquel); Armstrong v. Colvin, 2013 WL 3381352, at *4-5 (C.D. Cal. July 8, 2013) (Seroquel); Gentry v. Colvin, 2013 WL 6185170, at *12 (E.D. Cal. Nov. 26, 2013) (Zyprexa); Simington v. Astrue, 2011 WL 1261298, at *7 (D. Or. Feb. 23, 2011), adopted, 2011 WL 1225581 (D. Or. Mar. 29, 2011) (Lithium); compare Scott v. Astrue, 2013 WL 3243777, at *16 (N.D. Cal. June 26, 2013) (approving of ALJ's "conservative treatment" reasoning for rejecting claimant's credibility, where the claimant was taking only Prozac and was "not willing to consider therapy, which tends to suggest that her symptoms were not as bothersome as she alleged"); Adams v. Astrue, 2012 WL 4107882, at *5 (C.D. Cal. Sept. 19, 2012) (mental health treatment that consisted of periodic prescriptions for antidepressants (Wellbutrin and Prozac) and individual therapy for only a portion of the disability period was considered "conservative" and "non-aggressive").

///
///

In view of all of the attendant circumstances, under the authorities discussed above, the nature of Plaintiff's treatment for her mental health condition is not a specific, cogent finding upon which to uphold the ALJ's adverse credibility determination.

The ALJ's remaining stated reasons for discounting Plaintiff's credibility similarly fail to constitute the requisite specific, cogent findings. First, the receipt of unemployment benefits is not necessarily inconsistent with disability under the Social Security Rules. See Freeman v. Colvin, 2014 WL 793148, at *2 & n.1 (W.D. Wash. Feb. 26, 2014) (quoting the Appeals Council as stating: "The Chief Administrative Law Judge's memorandum, dated August 9, 2010, makes it clear that one's claim to be able to work doesn't contradict one's claim to be disabled under Social Security Rules. Under our sequential evaluation process, one can be found able to perform some work, and still be found disabled. . . . The Chief Administrative Law Judge's memorandum also states that applications for unemployment benefits must be considered as part of the overall evidence of record that is to support the ultimate determination. While such an application cannot alone disqualify one for disability benefits, as the hearing decision suggests, it is to be considered as part of the sequential evaluation."); see also Mulanax v. Commissioner of Social Sec., 293 Fed. App'x 522, 523 (9th Cir. 2008) (unpublished decision stating that the receipt of unemployment benefits by itself fails to support a conclusion that a claimant is not credible; "Generally, in order to be eligible for disability benefits under the Social Security Act, the person must be unable to sustain full-time work – eight hours per day, five days per week. However under Oregon law, a person is

eligible for unemployment benefits if she is available for some work, including temporary or part-time opportunities. Therefore, [claimant's] claim of unemployment in Oregon is not necessarily inconsistent with her claim of disability benefits under the Social Security Act.") (internal citations omitted). Under California law, a person who is only available for part-time work may still be eligible for unemployment benefits. See Cal. Unemp. Ins. Code § 1253.8. In this case, there is no indication whether Plaintiff based her claim for unemployment benefits on full-time or part-time work. On this record, therefore, the fact that Plaintiff may have claimed to be able to do some work does not support the ALJ's adverse credibility determination. See Carmickle v. Commissioner, 533 F.3d 1155, 1161–62 (9th Cir. 2008) ("[W]hile receipt of unemployment benefits can undermine a claimant's alleged inability to work full time, the record here does not establish whether [the claimant] held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations. Thus, such basis for the ALJ's credibility finding is not supported by substantial evidence.") (citations omitted); Vasquez v. Colvin, 2014 WL 65305, at *17 (D. Ariz. Jan. 8, 2014) (substantial evidence failed to support adverse credibility finding where the record did not establish whether the claimant who sought unemployment benefits held herself out as

///
///
///
///
///
///
///

available for full-time or part-time work).[5]

Second, the ALJ's characterization of Plaintiff's daily activities as "largely normal" and assertedly consistent with the requisites for obtaining and maintaining employment, is not a cogent reason to support the ALJ's adverse credibility finding. The ALJ stated that Plaintiff cares for two teenage daughters, drives, cooks simple meals, cleans, does laundry, shops weekly, attends church weekly (although she sits in the back), and visits her brother who lives in the same neighborhood. See A.R. 24-25.

///
///
///
///

---

[5] Ninth Circuit case law in this area does not appear to be entirely consistent. In Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005), the Ninth Circuit rejected as a basis for finding a claimant not credible the claimant's having held himself out as being able to work during the period of alleged disability. Id. at 687-88. Other Ninth Circuit decisions have upheld adverse credibility determinations based at least in part on a claimant's having held himself or herself out as being able to work during the period of alleged disability. See Bray v. Commissioner, 554 F.3d 1219, 1227 (9th Cir. 2009) (among the specific findings supporting ALJ's adverse credibility determination was fact that claimant had sought employment); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (upholding ALJ's adverse credibility determination where the ALJ relied in part on the fact that the claimant "received unemployment insurance benefits . . . apparently considering himself capable of work and holding himself out as available for work"). Most recently, in Ghanim v. Colvin, 2014 WL 4056530, at *8 (9th Cir. Aug. 18, 2014), the Ninth Circuit stated that "continued receipt" of unemployment benefits casts doubt on a claim of disability, but also stated that the receipt of some unemployment benefits followed by the subsequent refusal of unemployment benefits actually supports a claim of disability.

Plaintiff testified that she has two daughters, ages 19 and 13, and that the 13 year old lived at home (A.R. 50-51).[6] Although Plaintiff was taking medications, she explained that it was harder for her to perform daily activities like getting up, making something to eat, and washing herself (A.R. 56). Plaintiff said thought she had a ghost in her house because she is always hearing footsteps and talking in the next room when no one is there (A.R. 56). Plaintiff said she stays home and tends to avoid going out because she feels safer inside (A.R. 57). Plaintiff did say she goes to church on Sunday, but she reportedly sits in back near the door (A.R. 58). Plaintiff said she visits her brother and his family at his home, which is six or seven houses down from Plaintiff's home (A.R. 58).

Plaintiff reported in an activity form that she rarely leaves the house because she thinks people are following her "due to a lawsuit" (A.R. 183, 186-89; see also A.R. 242 (note in medical record indicating that Plaintiff's brother confirmed Plaintiff had legal

///
///
///

---

[6] When Plaintiff was hospitalized in October of 2010, she was pulled over for driving on the wrong side of the road (A.R. 52). Plaintiff thought people were following her (A.R. 52). Plaintiff had her 13 year old daughter with her at the time (A.R. 52). When police pulled Plaintiff over she ran and left her daughter in the car (A.R. 52). This incident led to Plaintiff's first mental health treatment during the disability period, and also led to the taking away of Plaintiff's daughter by the Department of Children and Family Services (A.R. 54; see also A.R. 237-55 (records from hospitalization)). Thus, for at least a portion of the disability period it appears that Plaintiff was unable to care for her daughter without assistance.

problems with businessmen that resulted in a court battle)).[7] Plaintiff reportedly spends her days trying to clean her house, waiting for her kids to walk home from school, cooking dinner, and watching DVDs before going to bed (A.R. 183). Plaintiff could make sandwiches and frozen dinners daily, clean and do laundry for two hours every other day, and grocery shop once a week for two hours (A.R. 185-86). Plaintiff thought she followed written and spoken instructions "good," but indicated that she has trouble concentrating and getting along with others (A.R. 188).[8]

A claimant does not have to be completely incapacitated to be disabled. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("Vertigan") ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

---

[7] In a third party report dated January 24, 2011, Plaintiff's brother repeatedly described Plaintiff as "very paranoid," "very withdrawn" and more secluded, explaining that he had seen an increase in Plaintiff's seclusion and wanting to be home alone (A.R. 168-75). The ALJ rejected Plaintiff's brother's report because, inter alia, Plaintiff's brother could not "be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant." See A.R. 25. The Ninth Circuit consistently has held that bias cannot be presumed from a familial or personal relationship. See, e.g., Regennitter v. Commissioner of Soc. Sec. Adm., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

[8] After a face-to-face meeting with Plaintiff on November 18, 2010, the disability interviewer reported that Plaintiff had been "very monotone," "very lathargic [sic]," and had appeared to have been heavily medicated (A.R. 159). The interviewer observed Plaintiff having difficulty with coherency and concentration (A.R. 159).

walking for exercise, does not in any way detract from her credibility as to her overall disability"); Gallant v. Heckler, 753 F.2d 1450, 1453-55 (9th Cir. 1984) ("Gallant") (fact that claimant could cook for himself and family members as well as wash dishes did not preclude a finding that claimant was disabled due to constant back and leg pain). The record does not suggest that Plaintiff at any time reported that she performed activities which would translate to sustained activity in a work setting on a regular and continuing basis for eight hours a day, five days a week. See Social Security Ruling 96-8p (defining scope of residual functional capacity).[9]

## II. Remand is Appropriate.

Because the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see

---

[9] In Burch v. Barnhart, 400 F.3d at 680 ("Burch"), the Ninth Circuit upheld an ALJ's rejection of a claimant's credibility in partial reliance on the claimant's daily activities of cooking, cleaning, shopping, interacting with others and managing her own finances and those of her nephew. In doing so, the Ninth Circuit did not purport to depart from the general rule that an ALJ may consider daily living activities in the credibility analysis only where "a claimant engages in numerous daily activities involving skills that could be transferred to the workplace." Id. at 681. Undeniably, however, it is difficult to reconcile the result in Burch with the results in cases like Vertigan and Gallant. Certainly, "the relevance of a claimant carrying on daily activities should be evaluated on a case-by-case basis." Bloch on Social Security § 3.37 (Jan. 2005). In the present case, in light of the seemingly conflicting Ninth Circuit case law as well as the evidence in the record suggesting that Plaintiff's daily activities are not "largely normal," this Court does not believe Burch compels affirmance.

Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett") (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); but see Orn v. Astrue, 495 F.3d at 640 (appearing, confusingly, to cite Connett for the proposition that "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits") (quotations omitted); see also Garrison v. Colvin, 2014 WL 3397218, at *21 (9th Cir. July 14, 2014) (court may "remand for further proceedings, even though all conditions of the credit-as-true rule are satisfied, [when] an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled"); Vasquez v. Astrue, 572 F.3d 586, 600-01 (9th Cir. 2009) (agreeing that a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).[10]

///

///

---

[10] There are outstanding issues that must be resolved before a proper disability determination can be made in the present case. For example, it is not clear whether the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability even if Plaintiff's testimony were fully credited. See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

**CONCLUSION**

For all of the foregoing reasons,[11] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 9, 2014.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[11] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." See Garrison v. Colvin, 2014 WL 3397218, at *21.